RECORD NO. 12-4551

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MICHAEL FOSTER FELTON,

*Defendant-Appellant.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HONORABLE J. FREDERICK MOTZ, U.S.D.J.

————————

**OPENING BRIEF OF APPELLANT**

————————

Thomas J. Saunders
LAW OFFICE OF THOMAS J. SAUNDERS
3600 Clipper Mill Road, Suite 201
Baltimore, Maryland 21211
(202) 320-8968
thomas.j.saunders@gmail.com

*Counsel for Appellant*

June 25, 2013

TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER JURISDICTION
      AND BASIS FOR APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      I.      The Government Did Not Meet its Burden of Proof by Providing
              Sufficient Evidence to Sustain a Conviction Against the Michael
              Felton  in Violation of Title 18 U.S.C. § 922 (g)(1)  . . . . . . . . . . . 10
              A.     Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
              B.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                     i.     The Evidence Was Insufficient to Demonstrate That the
                            Defendant Exercised Dominion and Control over the
                            Firearm to Support a Finding of Constructive
                            Possession  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                     ii.    Defendant's Mere Access and Proximity to the Firearm
                            Without More Is Insufficient to Sustain a Finding of
                            Possession  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                     iii.   Government Failed to Establish That the Defendant
                            Either Consciously or Knowingly Possessed
                            the Firearm  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      II.     The Government Did Not Meet its Burden of Proof by Providing
              Sufficient Evidence to Sustain a Conviction Against the Defendant
              for Conspiracy to Distribute One Kilogram or More of Heroin. . . . 21
              A.     Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              B.     Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH
    LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

Federal Cases

*Anders v. California*, 386 U.S. 738 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Glasser v. United States*, 315 U.S. 60 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993) . . . . . . . . . . . . . . . . . . 11

*United States v. Bell*, 954 F.2d 232 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Blue*, 957 F.2d 106 (4th Cir. 1992) . . . . . . . . . . . . . . . . 11, 16, 20

*United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Crain*, 33 F.3d 480 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . 17

*United States v. Gray*, 137 F.3d 765 (4th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hoyte*, 51 F.3d 1239 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mills*, 29 F.3d 545 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 9, 14

*United States v. Morrison*, 991 F.2d 112 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . 16

*United States v. Onick*, 889 F.2d 1425 (5th Cir. 1990 . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Pardo*, 636 F.2d 535 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Samad*, 754 F.2d 109 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . 16, 20

*United States v. Sanchez*, 961 F.2d 1169 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . 11

*United States v. Schocket*, 753 F.2d 336 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . 8

*United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001 . . . . . . . . . . . . . . . . . . . 22

*United States v. Terry*, 911 F.2d 272 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Wilson*, 484 F.3d 267 (4th Cir. Md. 2007) . . . . . . . . . . . . . . . . 22

*United States v. Wilson*, 922 F.2d 1336 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . 18

*United States v. Wright*, 24 F.3d 732 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . 14

Federal Statutes

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

## STATEMENT OF SUBJECT MATTER JURISDICTION
## AND BASIS FOR APPELLATE JURISDICTION

Michael Foster Felton appeals from the final judgment of conviction and sentence from the United States District Court for the District of Maryland at Baltimore. The United States District Court for the District of Maryland was the Court of original subject matter jurisdiction pursuant to Title 18 U.S.C. § 3231. On July 18, 2012, the District Court entered a judgment of conviction. A timely notice of appeal was filed on July 19, 2012 for Mr. Felton.

The United States Court of Appeals for the Fourth Circuit has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.   Whether the Government Met its Burden of Proof by Providing Sufficient Evidence to Sustain a Conviction Against the Defendant for Possession of a Firearm in Violation of Title 18 U.S.C. § 922 (G)(1)
   a.   Whether the evidence was sufficient to prove that the Defendant exercised dominion and control over the residence where the firearm was discovered to support a finding of possession
   b.   Whether the Defendant's access to the residence and proximity to the firearm without more is sufficient to sustain a finding of possession
   c.   Whether the Government introduced sufficient evidence that demonstrates the Defendant knowingly possessed the firearm

II.  Whether the Government Met its Burden of Proof by Providing Sufficient Evidence to Sustain a Conviction Against the Defendant for Conspiracy to Distribute One Kilogram or More of Heroin.

1

## STATEMENT OF THE CASE

Defendant, Michael Foster Felton, was charged in a seven count Superseding Criminal Indictment with Count One, Conspiracy to Distribute and Possession With Intent to Distribution Heroin, in violation of Title 21 U.S.C. §§ 846 and 860, and Count Three, Felon in Possession of a Firearm, in violation of Title 18 U.S.C. § 922 (g)(1). Mr. Felton appeared before the Honorable J. Frederick Motz, U.S. District Judge, and was tried before a jury sitting in the United States District Court for the District of Maryland in Baltimore.

On April 24, 2012, following a ten-day trial, the jury returned a verdict of guilty and convicted the Mr. Felton with  Conspiracy to Distribute and Possession With Intent to Distribution Heroin, as well as Felon in Possession of a  Firearm . On July 18, 2012, the District Court entered a judgment for Michael Felton of 240 months as to Count 1 and 120 months as to Count 3, to run concurrent to Count 1, and a term of supervised release of 10 years as to Count 1 and 3 years concurrent as to Count 3.  A timely notice of appeal was filed on July 19, 2012.


## STATEMENT OF FACTS

Special Agent Ryan identified Michael Felton as one of the individuals on Call 1151 on April 1, 2010 speaking to Christian Gettis and using code words to

2

speak about high quality heroin. JA 25-26 .On Calls 1196, 2378 and 2381, four hours later,  Gettis directed Felton to meet him at the Samos West store, where he would leave the heroin in the cup holder and leave the money under a green hoodie in the car. Surveillance observed Felton drive to Gettis' vehicle, enter it and leave. JA 27-29.  The following day there were calls between Gettis and Felton referencing "10", "17" and "22" that the agent interpreted as grams of heroin. Calls 2452, 2460 and 2465. JA 31.

Agent Thomas Ryan interpreted a series of call on April 12, 2010 as involving Gettis and Felton as using coded language for grams of heroin. Calls 2929, 2933, 2939, 2940, and 2941. JA 33-34. Then a series of calls on April 14, 2010, Calls 3040, 3041, and 3055 were interpreted as calls between Getttis and Felton wherein Felton orders 17 grams of heroin and then requests an additional 10 grams of heroin. JA 36. Agent Ryan was then asked about a series of calls on April 17, 2010. Calls 3205, 3208, 3211, 3216, 3217, 3221, and 3222. Agent Ryan interpreted the calls as Felton ordering 20 grams of heroin and then asking for 14 grams "real quick." 45. On April 18, 2010 a call between Gettis and Felton is interpreted as Gettis indicating he has picked up his supply and will meet with Felton. Call 3254. JA 41. Agent Ryan identifies a series of calls between Gettis and Felton on April 25, 2010 which involved a discussion of Gettis receiving

3

$1400 and expecting $1500. Calls 3692, 3696, 3698 and 3723. JA 47. On May 10, 2010 Calls 4952 and 4972 Gettis and Felton there are references to 137, 13 and ultimately 150 which Agent Ryan interpreted as grams of heroin. JA 48. On May 24, 2010 there is a call which Agent Ryan interprets as Felton talking to Gettis about his attempt to change the consistency of the heroin. Call 5814. JA 48-49. On August 4, 2010 regarding Call 12063 Agent Ryan testified that Gettis and Felton are talking about two different supplies of heroin: there was a difference in the color. JA 51-52.Calls 12071 and 12073 are calls between Gettis and Felton; surveillance then observes Gettis leaving his house. Calls 14522, 14547, 14553, 14591 and 14595 are all calls between Gettis and Felton on August 22, 2010. Agent Ryan interpreted a reference in the second call as 30 grams of heroin and a reference in the last call as 10 grams of heroin. JA 53-54. Calls 20372 and 20373 are calls between Gettis and Felton on October 23, 2010; Agent Ryan interprets the calls as Felton initially ordering 20 grams of heroin and then changing the order to 26 grams. JA 56-57. Call 23012 was a call between Felton and Gettis on November 15, 2010; Agent Ryan interpreted Felton's request for $17.00 as a request for 17 grams of heroin. JA 58. Calls 23705 and 23711 on November 20, 2010 were between Gettis and Felton. Shortly after the second call a pole camera image showed Felton arriving at Gettis' home. JA 58-59.

4

Prior to any search warrant Agent Ryan went to an apartment identified with Mr. Felton and knocked on the door. Mr. Felton identified himself and stated that he lived at the apartment. JA 60-61..

Special Agent Mark James testified regarding the search of that apartment on January 26, 2011. It was a one bedroom apartment. JA 64.  The bedroom closet contained male clothing.. No large quantities of currency, expensive items, mixing agents or drug paraphernalia were recovered from the apartment. JA 65-66. He also took photographs of a firearm recovered from the refrigerator in the residence. JA 74-76. Special Agent Garrett Swick assisted in the search as well. After Mr. Felton was arrested $2503.00 in cash was seized from him. JA 79. Detective Julie Pitocchelli testified that a handgun was seized from the apartment. It was located in brown paper bag in the crisper drawer of the refrigerator. JA 82.

Special Agent Tom Ryan testified regarding text messages seized from Billy Guy's residence. Text Message 49 sent to Felton was interpreted as offering to sell grams of heroin to Felton for $65.00. Text Message 59 is from Felton to Guy asking if they could do 50 grams. JA 85.  In Text Message  61 from Felton to Guy Felton says he could go for three stacks ($3000.00). Text Message 87 from Guy to Felton states he is going to have his man drop it off. JA 86-87. Text Message 94 from Guy yo Felton repeats that the price is $3250.00. JA 88. Subsequent Text

5

Messages 132-134 asks if Felton can be fronted $2250.00 of heroin after he gives Guy a "stack." JA 89. Subsequent Text Messages 161 and 162 were interpreted as messages between Felton and a customer of his where the customer asks for the price and Felton responds $75.00. JA 93. Text Messages 185 and 186 are interpreted as Guy telling Felton he is sorry but has to charge $70 a gram. JA 94-95. Text Message 222 which states I am sitting on 17 of that was interpreted as Felton telling Guy he has $1700.00 for him. JA 94. Text Message 310 is interpreted as Guy telling Felton that his man will deliver 125 grams of heroin to him. JA 95.

Elaina Graff was qualified as an expert in latent fingerprint examination. She examined latent prints from the firearm recovered from the refrigerator of the apartment alleged to be used by Felton. She recovered five latent prints and none matched the fingerprints of Felton. JA 94.

Mr. Felton testified in his defense. He denied ever purchasing heroin from either Mr. Gettis or Mr. Guy. He testified that the testimony attributing his voice in the phone calls was incorrect as he does not use any cellphone. Further he was simply a friend of Gettis and only recently met Guy when Gettis was hospitalized. JA 95-96. He testified that the Woodbourne apartment was his brother's apartment and the phone seized there was not his. Also the handgun recovered from the

6

refrigerator was not his. JA 103.

## SUMMARY OF THE ARGUMENTS

I.

The Government contends that the Defendant was in possession of the firearm that was seized during the lawful execution of a search warrant upon 1276 Woodbourne Ave on January 26, 2011. The evidence however was insufficient to sustain a finding of possession.

To prove a violation of 18 U.S.C. § 922 (g)(1), the Government must prove beyond a reasonable doubt, the following elements: The Defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; the Defendant knowingly possessed, transported, shipped, or received, the firearms set out in the indictment; and, the possession was in or affecting interstate or foreign commerce. *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995).

The Government contends that the Defendant was living at 1276 Woodbourne Ave and was therefore in possession of the firearm found inside crisper drawer of the refrigerator during the execution of the search warrant. The

Government did not rely on the presentation of actual evidence, but instead of constructive possession in support of its theory of possession. To prove constructive possession, the Government must show that the defendant knew that the firearm was present and that he either exercised, or had the power to exercise, dominion and control over the firearm. *United States v. Bell*, 954 F.2d 232, 235 (4th Cir. 1992). Knowledge of the presence of the item is essential to an assertion of constructive possession. Further this Court has held that a person has constructive possession of [an item] if he knows of its presence. *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985). Thus, a finding of constructive possession of an item requires a showing of exclusive dominion and control, as well as knowledge.

The Government failed to adequately demonstrate that the Defendant exercised exclusive dominion and control over the residence to sustain an inference of possession of the firearm discovered therein. The Defendant's access was not exclusive of others. Mere control or dominion over the place in which contraband or an illegal item is found by itself is not enough to establish constructive possession when there is joint occupancy of a place. *United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993). Hence, if a defendant has exclusive control of the premises, dominion and control might be inferable but joint

8

occupancy or non-exclusive control cannot sustain such an inference. *United States v. Mills*, 29 F.3d 545 (10th Cir. 1994).

Furthermore, the Government failed to prove the Defendant knowingly possessed the firearm, a necessary element of possession. There was no evidence of the Defendant in actual possession of the firearm. Likewise, the Government failed to demonstrate that the Defendant was the owner of the firearm or that he knew the firearm was in the house at the time of the search. Thus, the Government failed to present evidence that would otherwise adequately support a finding of knowledge.

As such, the Government did not meet its burden of proof by providing sufficient evidence to sustain a conviction against the Defendant in violation of 18 U.S.C. § 922 (g)(1). The evidence introduced at trial was insufficient to support a finding of exclusive dominion and control. The Government also failed to present evidence of the second requisite element of this offense, namely that the Defendant knowingly possessed the firearm. As a matter of law, the evidence in this present case was therefore insufficient to prove beyond a reasonable doubt that the Defendant constructively possessed the firearm seized from 1276 Woodbourne Ave on January 26, 2011.

9

II.

Mr. Felton believes that as the Government did not produce evidence that showed a sale by him of any heroin, did not seize either drugs or packaging paraphernalia from him, and his testimony showed unequivocally that he did not deal drugs or possess any heroin the verdict cannot be sustained against him.

ARGUMENTS

I.    The Government Did Not Meet its Burden of Proof by Providing Sufficient Evidence to Sustain a Conviction Against the Michael Felton  in Violation of Title 18 U.S.C. § 922 (g)(1)

A.    Standard of Review

In reviewing a challenge to the sufficiency of evidence, an appellate court must ask whether "there is substantial evidence, taking the view most favorable to the Government, to support" the conviction.  *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Gray*, 137 F.3d 765, 772 (4th Cir.).  "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).  Even though the Government may use circumstantial evidence and inferences, it must still prove each element of an offense beyond doubt.  *Id.* at 858.  If the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of

10

innocence, the reviewing court should reverse, as under these circumstances a reasonable fact finder must necessarily entertain a reasonable doubt. *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992). Further, the remedy for reversal of a conviction based on insufficiency of the evidence is entry of judgment of acquittal. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993) ("In the class of appeals premised on insufficiency of the evidence, retrial is not permitted in the event of reversal").

B.    Argument[1]

i.    The Evidence Was Insufficient to Demonstrate That the Defendant Exercised Dominion and Control over the Firearm to Support a Finding of Constructive Possession

The Government contends that the Defendant was in constructive possession of the firearm that was discovered in the refrigerator during the search of the residence known as 1276 Woodbourne Ave on January 26, 2011.  In order to sustain a finding of possession, the Government must prove that the Defendant maintained said residence and exercised dominion or control over the premises. *United States v. Blue*, 957 F.2d 106, 107 (4th Cir. 1992).

In determining whether the Defendant exercised the requisite level of

_____

[1] Counsel acknowledges the assistance of Lauren Kemper, Of Counsel, during the drafting of this argument.

dominion and control, it is necessary examine the nature and degree of the Defendant's connection to the property, i.e. whether the Defendant had an ownership or residential interest in the home. There are a number of cases that demonstrate the importance of this distinction. For example, in *Onick*, law enforcement officers found receipts made out to the defendant, his papers, clothes labeled with his nickname, and prescription bottles in his name. *United States v. Onick*, 889 F.2d 1425 (5th Cir. 1990). The presence of these items supported the conclusion that the defendant was in constructive possession of the drugs found on the premises. *Id.* However, a co-defendant's conviction was reversed because there was no evidence that showed she lived on the premises and was a permanent resident. *Id.* The Court explicitly disavowed the idea that "living on the premises is either necessary or sufficient" for a finding of possession, yet "in the absence of any evidence that the Defendant owned, rented, lived or kept his personal effects there, there is insufficient evidence to sustain a conviction for constructive possession. *Id.*

In this present case, the evidence introduced against the Defendant in connection with the residence was insufficient to support a finding of dominion and control over the home where the firearm was discovered. First of all, the Government offered no direct or circumstantial evidence Defendant was on the

12

title to the property, a lease, or had some other informal residential interest. No official or quasi official document to this effect was introduced. Likewise, there was no testimony offered to suggest the Defendant was staying there on a permanent basis. Even the most common and accessible means of proof, i.e. utility bill, driver's license, were absent from trial. There was simply no indicia of residency offered as evidence that would otherwise prove that the Defendant was more than a mere guest.

Second of all, even if the Defendant was occupying the home shortly before the search on January 26, 2011, his right to occupy and access the property was not exclusive of others. According to the Defendant's testimony, his brother was the owner of 1276 Woodbourne Ave. JA 103. He stated that he was not living at said property and had no ownership interest in the home. JA 109. He testified further claiming that 701 Benninghaus Road was his permanent address and that he has lived at that address his whole life. JA 107. Based on his testimony, it appears the Defendant was granted access and intermittent use of 1276 Woodbourne Ave by his brother. As such, it would be fair to classify the Defendant as a mere visitor or guest.

When a defendant has exclusive control over the premises, dominion and control can be inferred. *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990).

13

However, where there exists an inference that the Defendant is likely to be a mere co-occupant or co-resident, his presence or access to the residence is insufficient to support a finding of constructive possession. *Id.* at 278; *See also United States v. Crain*, 33 F.3d 480, 486 (5th Cir. 1994); *United States v. Terry*, 911 F.2d at 278. (if the defendant shares control over the premises with one or more other persons, the Government must show both that the defendant had access to the [contraband] and some element that distinguishes possession from mere presence or accessibility). Joint occupancy or non-exclusive control cannot sustain an inference of dominion and control to establish constructive possession. *United States v. Mills*, *supra*; *see also United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994) (While the Defendant's access and dominion over the home is a factor to be considered, it cannot alone establish constructive possession of the firearm found therein, particularity in the face of evidence that strongly suggest that somebody else shared dominion over the property).

In *Mills*, the defendant shared a house with a Judy Hall. There was evidence that Judy Hall was the owner of the weapons that formed the basis of the conviction and that she had placed the firearms in a dining room table compartment in the house, against the defendant's instructions. *Id.* at 550. Critical to the court's decision that the evidence of constructive possession was not

14

sufficient was that there was joint occupancy of the house, noting "we are unwilling to infer knowledge of 'dominion and control [by the defendant]." *Id.* Hence, if a defendant has exclusive control of the premises, dominion and control might be inferable but joint occupancy or non-exclusive control cannot sustain such an inference. *Id.*

Returning to this present case, the evidence against the Defendant in connection with the home does nothing more than establish his occasional use and access. In light of the Defendant's testimony, it appears the residency may have been occupied and shared with his brother. Likewise, it appears other people had access to the residency shortly before the search on January 26, 2011. For instance, the Defendant testified that there with a young lady with him in the day before the search who happened to stay overnight. JA 109.

Moreover, if the Defendant was living at 1276 Woodbourne Ave, as alleged by the Government, there would be substantial amount of evidence of his presence in the home. Nonetheless, there was no evidence found or observed during the search of the property linking the Defendant to any personal items or effects. Furthermore, the photographs of the men's clothing and men's shoes that were taken by Special Agent Mark James are of no consequence. (Exhibits 117A-F). These photos do not establish any identifiable nexus and cannot be traced to the

15

Defendant without additional proof.  It is also very plausible that the clothing belonged to someone else, most notable the Defendant's brother.

In sum, the evidence is insufficient to conclude that the Defendant had exclusive dominion and control of the home.  Thus, the Defendant cannot be found in possession of the firearm seized therein.

      ii.      Defendant's Mere Access and Proximity to the Firearm Without More Is Insufficient to Sustain a Finding of Possession

Although the Defendant may have been staying at the home where the firearm was discovered, there was no evidence connected him to the firearm. Other than his accessibility, the Government failed to offer any evidence involving the Defendant and the firearm.

Mere proximity is insufficient to establish constructive possession.  *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984).  Instead, there must be some action, words, or conduct that links the individual to the firearm and indicates that he had some stake in them or power over them.  *United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980).  There must be something to prove that the individual was not merely an incidental bystander.  *Id*. *See also United States v. Morrison*, 991 F.2d 112 (4th Cir. 1993) (the evidence was sufficient to find constructive possession of drugs where, in addition to residence, the defendant was present

16

when drugs were seized, large amounts of drugs and weapons were discovered throughout the house, and there was strong circumstantial evidence drugs were being sold from the residence and defendant was aware of the sales).

Moreover, the Fourth Circuit found that evidence was insufficient to establish constructive possession, noting that the proximity of the defendant to the firearm established only accessibility rather than exclusive dominion and control. *United States v. Blue*, *supra* at 108. In *Blue*, the evidence established that a police officer saw the defendant sitting in the passenger seat of a car and saw his shoulder dip as the officer approached the vehicle. *Id*. The officer later found a firearm under the passenger's seat. *Id*. The court found that evidence insufficient to establish constructive possession, noting that the proximity of the defendant to the firearm established only accessibility rather than dominion and control. *Id*. The court further noted that the shoulder dip and the location of the pistol were insufficient because the Government "did not produce fingerprints or other physical evidence which would link [the defendant] with the gun" and "there was "no evidence demonstrating that [the defendant] owned the gun or testimony that [the defendant] had been seen with the gun." *Id*.

In *Gallimore*, this Court found that the defendant constructively possessed firearms found in his house and a safe that also contained a brief case with his

17

personal documents. *United States v. Gallimore*, 247 F.3d 134, 137 (4th Cir. 2001). The residence was owned by the defendant and there was testimony that he had been present in the residence within 24 hours of the discovery of the firearms. *Id.* at 137. There were also papers with the defendant's name on them found with some of the guns in the safe. *Id.* at 138. However, there was no evidence of how long the gun had been in the apartment, how long it had been in the end table or how it came to be in the end table. *Id.* The location of the table was also such that any visitor who came to the apartment would have access to it. *Id.* Unlike *Gallimore,* there is no concrete nexus between the gun and the Defendant in this case. The Defendant has no ownership interest in the residence and there was no proof that the Defendant had been in the home days prior to the discovery of the firearm.

In other cases, the presence or absence of the defendant's fingerprints were significant factors in deciding whether there was sufficient evidence to sustain a conviction. For example, in Wilson, the defendant was convicted of being a felon in possession of a firearm. *United States v. Wilson*, 922 F.2d 1336 (7th Cir. 1991). The prosecution's fingerprint expert found a latent ridge detail on the pistol that matched the defendant's thumb. The reviewing court wrote that "the most incriminating evidence of possession was undoubtedly the fingerprint." *Id.* at

18

1338.  In this instant case however, the Defendant's fingerprints were not found on the firearm he allegedly possessed.  JA 94. There were no prints found on neither the ammunition nor the machine.  Thus, there was no forensic evidence linking the Defendant to the firearm.

In sum, the only evidence connecting the Defendant to the firearm was his presence in the home prior to the day of the search.  This evidence is tenuous at best.  There must be some words, conduct or otherwise, that specifically links the firearm to the Defendant to find him in possession.  There was no evidence that the Defendant owned the firearm or testimony from any witnesses that he had been seen with the firearm. There was also no evidence of his fingerprints or DNA on the firearm.  As noted above, the Defendant did not have exclusive control of the home.  Anyone who shared access with the Defendant or came into the home at some point in time prior to the search would have had access to the common areas, which would include the kitchen where the refrigerator was located. Although the firearm was found inside the crisper drawer, there was nothing in particular about the refrigerator or kitchen that would suggest limited access.  It was not locked and there was nothing unusual about it that would connect it with the Defendant. How, when or by whom the firearm was placed is not supported in evidence.

iii.    Government Failed to Establish That the Defendant Either

19

Consciously or Knowingly Possessed the Firearm

Access to the residence for a period of time before the seizure is not sufficient to show conscious possession of the firearm. There must be evidence the defendant knew of the presence of the firearm on the premises. *United States v. Blue, supra* at 107.

The holding in *Samad* demonstrates that even if a defendant is found to have exercised dominion and control over an item, absent a showing that the defendant had knowledge of the item's presence, there is insufficient evidence to support a finding of constructive possession. *United States v. Samad, supra*. In Samad, the defendant exercised dominion and control over the contraband by receiving the package in the mail, yet did not have the requisite knowledge of the item as illegal drugs. *Id.* As a result, the court held there was insufficient evidence to uphold a conviction premised on constructive possession. Id. Thus, Samad illustrates the Governments burden of production in a constructive possession case. Even if the defendant is found in possession of a key, knowledge cannot be presumed.

In the present case, the Government failed to show Defendant's knowledge of the firearm located in the home. The strongest evidence that could have proven the Defendant knowingly possessed the firearm is not present in this case: the

20

Defendant was not in actual possession of the firearm; his fingerprints were not found on the firearm; there is no evidence the firearm was purchased or registered by the Defendant; and no one witnessed the Defendant in possession of the firearm. *See*, Statement of Facts, *supra.* The record shows no evidence of any statements, acts, declarations or conduct from which an inference of conscious possession may fairly be drawn.

Thus, even if the Defendant is found in dominion and control, absent evidence that the Defendant had knowledge of the nature and presence of the firearm, there is insufficient evidence to sustain the conviction on the theory of constructive possession. Therefore, the Government failed to prove a necessary element of Defendant's conviction for possession of a firearm.

II.     The Government Did Not Meet its Burden of Proof by Providing Sufficient Evidence to Sustain a Conviction Against the Defendant for Conspiracy to Distribute One Kilogram or More of Heroin.

A.     Standard of Review

This Court reviews the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Circuit has added that a defendant challenging the sufficiency of the evidence supporting his

21

conviction bears "a heavy burden," *United States v. Hoyte*, 51 F.3d 1239, 1245, (4th Cir. 1995), and that a conviction must be upheld if the evidence, viewed in the light most favorable to the government, supports the verdict. *See United States' v. Stewart*, 256 F.3d 231, 249 (4th Cir. 2001).

B.    Argument

Counsel is raising this issue pursuant to *Anders v. California*, 386 U.S. 738 (1979). Set out below is counsel's understanding of Mr. Felton's position why he feels he should not have been convicted on the evidence produced but counsel, after diligent effort, can find no legal basis to support the issue.

The Government's entire case relies upon inferences from phone calls and an agent's opinions that coded language referred to heroin as opposed to a more innocuous meaning. This Court has ruled that opinion testimony, such as was given in the instant case is admissible. *United States v. Wilson*, 484 F.3d 267, 273-278 (4th Cir. Md. 2007).

The Government presented no evidence of any drugs, drug paraphernalia, or other physical evidence, seized from Mr. Felton, indicating that Mr. Felton possessed heroin, much less distributed it.  There were no controlled purchases from Mr. Felton and no surveillances of any transactions. There was also no

22

testimony from any witnesses that Mr. Felton distributed heroin to them as a

customer. Moreover, Mr. Felton testified and clearly noted that he did not buy or

distribute heroin. *See*, Statement of Facts *supra*.


CONCLUSION

For the reasons set forth above, Defendant, Michael Foster Felton,

respectfully requests that this Honorable Court  reverse the judgment of the court

below.


Respectfully submitted,

Thomas J. Saunders
3600 Clipper Mill Road, Suite 201
Baltimore, MD 21211
410-662-5586
202-320-8968
Facsimile 410-662-5589
Federal Bar # 25084

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH
LIMITATIONS

This Brief has been prepared using WordPerfect X5, 14 pt. Times Roman

EXCLUSIVE of the Table of Contents; Table of Citations; Statement with respect

to oral argument; and the Certificate of Service, the Brief contains 5389 words

which does not exceed the limitation of 14,000 words.

I understand that a material misrepresentation can result in the Court's striking the

brief and imposing sanctions.  If the Court so directs, I will provide an electronic

version of the Brief and/or a copy of the word or line print-out.

CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2013, I filed with the Clerk's Office of the

United States Court of Appeals for the Fourth Circuit the required number of

copies of this Brief of Appellant and Joint Appendix via hand delivery and

electronically using the Court's CM/ECF system which will send notification of

such filing to the following:

Ayn Ducao, AUSA
Christopher Romano, AUSA
Office of the United States Attorney
36 S. Charles St., 4th Floor
Baltimore, MD 21201

AND

24

the Brief was served by US Mail on;

 Michael Felton 52977-037,
FCI Edgefield,
PO Box 725,
Edgefield, SC 29824.

Thomas J. Saunders

25